UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTIAN YAIR DE LA CRUZ GUILLERMO,<br><br>    Petitioner,<br><br>    v.<br><br>DERRICK STAMPER, *in his official capacity as Chief Patrol Agent of Houlton Sector, U.S. Border Patrol*, et al.,<br><br>    Respondents. | No. 2:26-cv-00040-JAW |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Finding the government's detention of a noncitizen violates due process, the court grants the noncitizen's petition for writ of habeas corpus and orders the government provide the noncitizen a bond hearing within fourteen days. The court further orders the government to produce the warrant authorizing the noncitizen's initial arrest.

**I.   BACKGROUND[1]**

Christian Yair De La Cruz Guillermo, a resident of Middlesex County, Massachusetts, is a citizen of Mexico who entered the United States without inspection on or about July 21, 2023. *Pet. for Writ of Habeas Corpus* ¶¶ 1-2, 23-25 (ECF No. 1) (*Pet.*). On January 15, 2026, U.S. Immigration and Customs

---

[1]   For the purposes of Mr. Guillermo's petition for writ of habeas corpus, upon agreement of the parties, the Court reviews the relevant facts as pleaded in his verified petition and accompanying attachments.

Enforcement arrested Mr. Guillermo at a construction worksite in Bethel, Maine. *Id.* ¶¶ 3, 28-29. On January 22, 2026, Mr. Guillermo filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against his removal from the District of Maine and to ensure his access to counsel pending his habeas proceedings. *Id.*; *Emer. Mot. for TRO to Stop Transfer Without Prior Consent* (ECF No. 2) (*Mot. for TRO*). That same day, the Court issued a seventy-two-hour emergency order, enjoining Respondents from transferring Mr. Guillermo outside the District of Maine. *Emer. Order Concerning Stay or Transfer of Removal* (ECF No. 4).

At the teleconference of counsel on January 23, 2026, Respondents informed the Court that Mr. Guillermo had been removed from Maine to Massachusetts before Mr. Guillermo filed his petition and, therefore, when the Court issued its seventy-two-hour emergency stay order, it was without jurisdiction to do so. *Min. Entry* (ECF No. 5). However, later that same day, Respondents informed the Court that Mr. Guillermo had in fact been in the District of Maine at the time of the filing of the habeas corpus petition and that he remained in the District of Maine, and Respondents conceded both that the Court retained jurisdiction over Mr. Guillermo's habeas petition and that the January 22, 2026 emergency order remained in effect. *Order* (ECF No. 6).

On January 26, 2026, the Court ordered Respondents to show cause why Mr. Mr. Guillermo's petition should not be granted, *O.S.C.* (ECF No. 7), and issued a TRO barring Respondents from removing Mr. Guillermo from the District of Maine and

2

ordering Respondents to provide Mr. Guillermo with reasonable access to counsel during his period of detention. *Order on Mot. for TRO* (ECF No. 8). That same day, Respondents filed their response to the show cause order, opposing Mr. Guillermo's petition, *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 9) (*Resp'ts' Opp'n*), and Mr. Guillermo filed his reply on January 28, 2026. *Pet'r's Reply to Resp'ts' Resp. to O.S.C.* (ECF No. 10) (*Pet'r's Reply*). The parties also agreed there were no factual disputes for the Court to resolve in this matter and stipulated to the facts in Mr. Guillermo's verified petition and its exhibits, and that the Court may resolve Mr. Guillermo's petition on their briefing, without oral argument. *Resp'ts' Opp'n* at 2; *Pet'r's Reply* at 3.

## II.   THE PARTIES' POSITIONS

Mr. Guillermo alleges his detention violates the Immigration Nationality Act (INA) and his due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 40-49. Mr. Guillermo maintains he is illegally categorized as a mandatory detainee pursuant to 8 U.S.C. § 1225(b)(2), rather than a discretionary detainee under § 1226(a) who is entitled to a bond hearing before an Immigration Judge. *Id.* ¶¶ 43-45. Pointing to recent Board of Immigration Appeals (BIA) precedent he interprets as likely foreclosing his request for a bond hearing, Mr. Guillermo anticipates being denied a bond hearing in violation of his Fifth Amendment due process rights. *Id.* ¶¶ 38-39, 45. Mr. Guillermo also maintains he was arrested without a warrant. *Id.* ¶ 29. Mr. Guillermo seeks, among other remedies, a writ of habeas corpus ordering his immediate release, or in the

alternative, an order requiring an Immigration Judge to provide him a bond hearing as soon as possible. *Pet.* 10-11.

In their opposition, Respondents maintain Mr. Guillermo is properly categorized as a mandatory detainee under § 1225(b)(2), as dictated by controlling agency precedent. *Resp'ts' Opp'n* at 2. However, Respondents acknowledge that "recent caselaw from this Court [has] uniformly sustain[ed] challenges to DHS's interpretation of § 1225" and they concede Mr. Guillermo's case is not substantially distinguishable from that line of cases. *Id.* Respondents do not contest Mr. Guillermo's allegation that he was arrest without a warrant.

### III. DISCUSSION

#### A. Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Guillermo's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, under habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf. *Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948). Here, the Court retains jurisdiction over

this matter, because, as Respondents now concede, Mr. Guillermo filed his habeas petition when he was in custody in the District of Maine.

### B.   The Merits

Consistent with the mass of recent caselaw addressing this question on similar facts, the Court concludes that § 1225(b)(2) is inapplicable to Mr. Guillermo, and he is therefore subject to discretionary detention under § 1226(a) and entitled to a bond hearing.  However, Mr. Guillermo alleges he was arrested without a warrant, and the Court orders Respondents to produce the warrant authorizing Mr. Guillermo's arrest.

#### 1.   Statutory Framework

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1).  Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (plurality opinion).  Relevant here is § 1225(b)(2).[2]  Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  Thus, § 1225(b)(2) creates a mandatory detention scheme.  *See Jennings*, 583 U.S. at 297

---

[2]   Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expediated removal proceedings.  *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii).  Noncitizens subject to expedited removal can avoid removal with successful asylum claims.  However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed.  *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

5

(2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 Dist. LEXIS 128085, at *4-5 (D. Mass. Jul. 7, 2025). However, § 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by

preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). An immigration judge's decision to continue detaining a noncitizen may be appealed to the BIA. 8 C.F.R. § 236.1(d)(3).

In *Jennings*, the Supreme Court provided guidance on the difference between the statutes, explaining that § 1225(b)(2) "authorizes the Government to detain certain aliens *seeking admission* into the country under," while § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis supplied); *see also id.* at 288 (explaining that, "once inside the United States" a noncitizen "*present in the country* may still be removed" under "Section 1226") (emphasis supplied)).

### 2. Applicability of Section 1226(a)

As Respondents concede, recent decisions from district courts within the First Circuit and elsewhere have consistently rejected Respondents' interpretation of § 1225(b)(2)'s mandatory detention scheme under similar factual circumstances. *See Mercado v. Francis*, No.25-cv-6582 (LAK), 2025 U.S. Dist. LEXIS 232876, at *9-10, n.22 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States") (collecting cases); *Lopez v. Trump*, No. 2:25-cv-863, 2025 U.S. Dist. LEXIS 233128, at *6 (D. Vt. Nov. 17, 2025) (rejecting DHS's application of § 1225(b) mandatory detention to re-detain noncitizen originally released under § 1226(a));

7

*Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 195270, at *7-8 (D. Me. Oct. 2, 2025) (collecting cases).

At bottom, the district courts consistently hold that § 1225(b)(2) applies only to those noncitizens who are actively "seeking admission," and a noncitizen continuously residing in the United States for more than two years cannot be considered actively seeking admission. *See, e.g.*, *Chogllo Chafla v. Scott*, No. 2:25-cv-00437-SDN, 2025 U.S. Dist. LEXIS 184909, at *35 (D. Me. Sept. 21, 2025). Rather, a noncitizen "already in the country pending the outcome of removal proceedings" is subject to discretionary detention under § 1226(a). *Jennings*, 583 U.S. at 289. As Mr. Guillermo explains in his petition, and Respondents do not contest, he has resided in the United States since July 2023. *Pet.* ¶ 2. Therefore, Mr. Guillermo cannot be categorized under § 1225(b)(2) as actively seeking admission. Instead, as a noncitizen already in the country, he is properly categorized under § 1226(a)'s discretionary detention scheme. Accordingly, Mr. Guillermo is entitled to a bond hearing before an Immigration Judge. *See Hernandez-Lara*, 10 F.4th at 41.

### 3. Due Process

Because Mr. Guillermo is currently in the United States, he is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 U.S. Dist. LEXIS 175513, at *25 (D. Mass. Sept. 9, 2025), which provides that he will not be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the

legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). As the petitioner, however, Mr. Guillermo bears the burden of demonstrating by a preponderance of the evidence that his detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).

To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Chogllo Chafla*, 2025 U.S. Dist. LEXIS 184909, at *29 (analyzing procedural due process challenge to the detention of noncitizen held pursuant § 1226(a) using the *Mathews* test); *Sampiao,* 2025 U.S. Dist. LEXIS 175513, at *26 (same); *Hernandez-Lara*, 10 F.4th at 27-28 (same). Under *Mathews*, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

9

### a.     Private Interest

In his petition, Mr. Guillermo asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects"). A noncitizen subject detained under § 1226(a) vindicates their due process rights through a bond hearing before an Immigration Judge who requires the government either to (1) prove by clear and convincing evidence that a noncitizen poses a danger to the community or (2) prove by the preponderance of the evidence that they pose a flight risk in order to detain them throughout the pendency of their removal proceedings. *See Hernandez-Lara*, 10 F.4th at 41. In this case, Respondents have refused Mr. Guillermo the bond hearing he is guaranteed under § 1226(a) and have failed to meet their burden for his continued detention as due process requires. Mr. Guillermo has therefore clearly established the first *Mathews* factor weighs in his favor.

### b.     Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of erroneous deprivation is large where, as here, Respondents have made no showing

10

that Mr. Guillermo presents any public safety or flight risk. Accordingly, the second *Mathews* factor also weighs heavily in his favor.

### c. Government Interest

Finally, the third *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Respondents do not raise any governmental interest favoring Mr. Guillermo's continued detention without a bond hearing. *See Chogllo Chafla*, 2025 U.S. Dist. LEXIS 184909, at *34 (identifying governmental interest in favor of immigration habeas petitioners' continued detention without a hearing as an "across-the-board application of an inapplicable statute"). In fact, the public interest weighs against detention without a hearing. *See Hernandez-Lara*, 10 F.4th at 33 (finding "unnecessary detention" of noncitizens "imposes substantial societal costs"). Thus, the third *Mathews* factor weighs against Respondents and in favor of Mr. Guillermo. Respondents' detention of Mr. Guillermo without a bond hearing pursuant to § 1226(a) therefore violates Mr. Guillermo's due process rights.

### 4. Cristian Yair De Le Cruz Guillermo's Warrantless Arrest Allegation

Mr. Guillermo alleges Respondents arrested him without a warrant, *Pet.* ¶ 29, which is required to detain a noncitizen under § 1226(a). *See* 8 U.S.C. §§ 1226(a) ("On a *warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" (emphasis supplied). However, Respondents failed to address this argument in their

opposition. Accordingly, the Court orders Respondents to produce the Mr. Guillermo's arrest warrant in accordance with the terms of this order.

## IV. CONCLUSION

Finding Respondents' continued detention of Mr. Guillermo without a bond hearing violates federal law and the Fifth Amendment of the United States Constitution, the Court GRANTS Cristian Yair De La Cruz Guillermo's Petition for Writ of Habeas Corpus (ECF No. 1) and ORDERS Respondents shall provide Mr. Guillermo a bond hearing in accordance with 8 U.S.C. § 1226(a)(2) within fourteen days of the date of this order. The Court further enjoins Respondents from denying Mr. Guillermo a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to him. The Court ORDERS Respondents to file a status report within five days of Mr. Guillermo's bond hearing, stating whether Mr. Guillermo has been granted bond, and, if his request was denied, the reasons for that denial.

Lastly, the Court ORDERS Respondents to produce by no later than January 30, 2026, the arrest warrant authorizing Mr. Guillermo's January 15, 2026 arrest.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026